IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| LAUGER COMPANIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:16-cv-11 |
| | § | |
| MID-CONTINENT CASUALTY COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT MID-CONTINENT CASUALTY COMPANY'S MOTION TO STAY PROCEEDINGS

COMES NOW, Defendant, Mid-Continent Casualty Company ("Mid-Continent"), Defendant in the above-entitled and numbered case, and offers this its Motion to Stay Proceedings. In support of its Motion, Mid-Continent would respectfully show the Court as follows:

## I.
## INTRODUCTION

1. Defendant, Mid-Continent, requests that the Court exercise its inherent power to stay the proceedings in this case pending final resolution by the Texas Supreme Court of the case entitled *U.S. Metals, Inc. v. Liberty Mutual Group, Inc. d/b/a/ Liberty Mutual Insurance Corporation*, Case No. 14-0753 ("*U.S. Metals*").

2. On December 4, 2015, the Texas Supreme Court issued an opinion in *U.S. Metals*. On January 20, 2016, both parties filed for motions for rehearing. On February 25, 2016, interested parties, including Mid-Continent, filed an amici brief in support of appellee's Motion for Rehearing.

3. The Texas Supreme Court's final opinion in *U.S. Metals* may have a major impact on the outcome of this case. As such, staying the present case pending its final resolution would

promote the interests of judicial economy.

4. The initial opinion in *U.S. Metals* represents a significant change in the law regarding coverage of consequential damages under a commercial general liability policy. It is therefore reasonable to believe that the court might withdraw its opinion. This same issue regarding consequential damages is central to this case. Moreover, a withdrawal of the initial opinion might eliminate the need for this suit altogether by precluding coverage for Plaintiff's claim. As such, staying the present case pending final resolution of *U.S. Metals* will promote judicial economy by preventing this potentially needless litigation.

5. The initial opinion in *U.S. Metals* holds no precedential value until it is final, that is, until the pending motions for rehearing have been resolved. As such, this Court should not make a determination in the present case based on this initial opinion.

6. Further, given the early stage of this litigation, a stay will not unduly prejudice Plaintiff. Indeed, because it will allow this Court to rule based on a final, precedential decision, a stay will save valuable time and resources no matter what the outcome of *U.S. Metals*. Moreover, the stay is not indefinite—it hinges on final resolution by the Texas Supreme Court. Further, it will cause hardship to Defendant (and Plaintiff) by litigating a case that may ultimately be voluntarily dismissed by Plaintiff if the Texas Supreme Court makes clear there is no coverage for these types of consequential damages.

7. Given that a stay will promote judicial economy, work no undue prejudice on Plaintiff, and, if not granted, will cause hardship to Defendant, this Motion should be granted and these proceedings stayed pending final resolution of *U.S. Metals*.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

8. On January 26, 2016, Plaintiff Lauger Companies, Inc. ("Lauger") filed the present suit. According to Lauger's Petition, in October 2012, Lauger purchased concrete from Cross Roads Industries, Inc. ("Cross Roads") as part of the materials to be used by Lauger in the construction of a building foundation for a client (MW Rentals). Lauger states that it excavated the site, did the dirt work, placed the forms, laid the re-bar, and laid out the anchor bolts, and that the final component of the foundation was the concrete provided by Cross Roads.

9. According to Lauger's Petition, the concrete provided by Cross Roads was to be at least 3000 pounds per square inch strong. Shortly after the foundation was laid, Lauger states that testing was performed on concrete samples taken at the time the concrete was poured. The test results allegedly showed that the concrete foundation was structurally inadequate because the concrete was not 3000 pounds per square inch strong.

10. The Plaintiff further alleges that the concrete provided by Cross Roads caused the entire foundation to fail, and Lauger Companies was forced to remove the entire foundation that it had built for MW Rentals. Lauger states that the defective concrete damaged, ruined and rendered useless all of the other component parts used in the foundation. Lauger states that it had to tear out all of the defective concrete and completely rebuild the foundation with all new components.

11. Lauger sued Cross Road in Texas state court for negligence and for breaches of the Texas Deceptive Trade Practices Act, of contract, and of warranty. On October 9, 2015, two months before the initial *U.S. Metals* decision, the state court granted Lauger's unopposed motion for summary judgment and entered a Final Judgment on these claims, awarding it $162,009.14 in actual damages, plus other relief as specified in the Final Judgment.

12. On January 26, 2016, Plaintiff Lauger Companies, Inc. ("Lauger") filed this suit against Mid-Continent seeking coverage for the final judgment under the Mid-Continent policy issued to Cross Roads.

### III.
### ARGUMENT AND AUTHORITIES

**A.  The Initial Decision Holds No Precedential Value Because It Is Not Final**

13. Under Texas law, a case has no precedential effect until it is final. *Henderson v. State*, 822 S.W.2d 171, 173 (Tex. App.—Houston [1st Dist.] 1991, no pet.) (citing *Yeager v. State,* 727 S.W.2d 280, 281 n.1 (Tex. Crim. App. 1987) (stating that "an opinion which is not yet final is not part of the jurisprudence of this State")).

14. Further, an appellate court judgment is not enforceable until the appellate court has issued its mandate. *See In re City of Cresson*, 245 S.W.3d 72, 74 (Tex. App.— Fort Worth 2008, orig. proceeding) (citing *In re Long*, 984 S.W.2d 623, 625-26 (Tex. 1999, orig. proceeding)). An appellate court generally will not issue its mandate until after all deadlines for further review have passed. *See* TEX. R. APP. P. 18.1.  With respect to the Texas Supreme Court, Texas Rule of Appellate Procedure 18.1(b) provides that the Supreme Court will not issue its mandate until "[t]en days after the time has expired for filing a motion to extend time to file a motion for rehearing if no timely filed motion for rehearing or motion to extend time is pending."  Thus, until the Texas Supreme Court rules upon the parties' rehearing motions, the Court's initial judgment in *U.S. Metals* is not final, because it will not issue its mandate until after that time.

15. As such, the Court should not rely on the initial decision in *U.S. Metals* in ruling in the present case, but rather stay the case pending a final decision by the Texas Supreme Court.

The initial decision is not yet a part of Texas jurisprudence and may never be should it get withdrawn on rehearing and thus, is not a proper basis for a ruling in the present case. As such, a stay is appropriate pending a final, enforceable opinion.

### B. All Relevant Factors Weigh In Favor Of A Stay

16. District courts have the inherent power to control their own docket, including the power to stay proceedings. *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 978 (S.D. Tex. 2011) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254, (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants")). "The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation. . . ." *Dominguez v. Hartford Fin. Servs. Group, Inc.*, 530 F. Supp. 2d 902, 905 (S.D. Tex. 2008) (citing *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990)). Whether to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. at 254–55.

17. Courts traditionally weigh the following factors in determining whether a stay is appropriate: (1) the judicial resources saved by avoiding duplicative litigation; (2) potential prejudice to the non-moving party; and (3) hardship to the moving party if a stay is not granted. *Halliburton Energy Servs. v. BP Exploration & Prod.*, No. H-11-3392, 2012 WL 149525, *2 (S.D. Tex. Jan. 18, 2012).

18. A stay here would promote judicial economy, will not prejudice the Plaintiff if it is granted, and would work a hardship on Mid-Continent if not granted. Thus, all three factors weigh in favor of a granting Mid-Continent's Motion to Stay pending final resolution of *U.S. Metals*.

1.   **Staying The Present Case Would Promote Judicial Economy**

    *a.*   *U.S. Metals Potentially Represents A Significant Shift In Texas Law*

19.   The Texas Supreme Court's final decision in *U.S. Metals* may have a great impact on the present case.  As it stands now, the question of whether coverage exists for consequential damages arising from "property damage" that is not covered is undecided.  This is because the initial opinion in *U.S. Metals* represents a departure from previously established Texas law on this matter.  Until *U.S. Metals*, insureds were not entitled to coverage for such damages if there was no covered "property damage" before the ripping and tearing to remove the insured's defective product.

20.   A commercial general liability policy's insuring agreement (like the one found in the Mid-Continent policy) unambiguously obligates an insurer to "pay those sums that an insured becomes legally obligated to pay as damages because of . . . '*property damage' to which this insurance applies*."  Although the "rip and tear" expenses are consequential damages, these expenses are not "damages because of . . . 'property damage' *to which this insurance applies*."

21.   Indeed, Texas law previously made clear that "rip and tear" costs are not covered when the problem to which access must be gained is not "property damage" in the first place. *Lennar Corp v. Great Am. Ins. Co.*, 200 S.W.3d 651, 679-80 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).  Furthermore, in *Lennar Corp. v. Markel American*, 413 S.W.3d 750 (Tex. 2013), the Court permitted consequential damages, but only if such damages flowed from otherwise *covered* property damage.  In *Lennar*, the Court held that the costs to find water damage caused by EIFS for homes *that had covered property damage* fell under the policy. *Id.* at 757-58. However, Lennar removed forty-eight homes that had not incurred covered "property damage" from its proof at trial and did not seek to recover consequential for those homes.

*Markel Am. Ins. Co. v. Lennar Corp.*, 342 S.W.3d 704, 711 (Tex. App.—Houston [14th Dist.] 2011).

22. In this case, there was no covered "property damage" prior to the time Lauger deemed it necessary to rip out the alleged defective concrete as the Mid-Continent policy excludes coverage for the insured's defective concrete product. As such, there should be no coverage in this case under the plain language of the Mid-Continent policy.

        b.  *A Stay Will Save Time And Money For The Court And The Parties*

23. Significant resources will also be spent in the meantime proceeding with this case while awaiting a final decision. This expense might prove wasteful depending upon the final decision in *U.S. Metals*. For example, should the final decision preclude coverage for Plaintiff, a stay would have prevented it from further investing in this pursuit of coverage. Staying these proceedings for a short time pending final resolution of such an important case will thus allow this Court and the parties to avoid waste and save valuable time and money for all.

        c.  *The Law Is Unclear Until Final Resolution Of U.S. Metals*

24. Rather than risk rendering a decision inconsistent with the Texas Supreme Court's final opinion, this Court should stay these proceedings and proceed at a time in the near future when the law is more clear. Again, this will eliminate the risk of needless litigation in the event of a reversal. It will also promote judicial economy by potentially simplifying (or at least clarifying) the law that this Court must consider in ruling in the present case. At the very least, such clarity might promote discussion of a resolution to the present case, which will save time and expense to both the Court and the parties. In light of these considerations, this first factor considering judicial economy weighs heavily in favor of granting Mid-Continent's Motion to

Stay.

### 2. Staying The Present Case Will Not Prejudice The Plaintiff

25. A stay will not unduly prejudice Plaintiff because *U.S. Metals* may greatly impact the outcome of this case. As discussed above, a stay may save Plaintiff from wasting time and resources on needless additional litigation.

26. Further, a stay will not prejudice Plaintiff because the case is still in its nascent stages: no formal discovery has been exchanged, and no trial date has been set.

27. Moreover, the stay is not indefinite, but rather hinges on a final decision by the Texas Supreme Court. Pursuant to Article 5 §31(d) of the Texas Constitution, a motion for rehearing must be ruled on by the Texas Supreme Court within 180 days or else be deemed denied. Thus, the stay will likely be lifted, at the latest, on July 19th, giving it a maximum duration of less than three months.

28. This delay is slight when compared to the potential savings to the parties. *Cajun Offshore Charters, LLC v. BP, PLC*, Civ. Action No. 10-1341, 2010 WL 2160292 at *2 (E.D. La. May 25, 2010) ("A delay of a few months. . . is, nonetheless, slight when compared to the hardship to the defendants and the interests of judicial economy"). As such, this factor weighs in favor of granting Mid-Continent's Motion to Stay.

### 3. Mid-Continent Will Experience Hardship If A Stay Is Not Granted

29. Mid-Continent will experience hardship if a stay is not granted, as it will be forced to expend costs and expenses litigating a case that might be proven unnecessary after the Texas Supreme Court issues its final decision. If the stay is denied, Mid-Continent will be forced to invest in discovery and other litigation costs when the final decision might negate

coverage altogether for Plaintiff. As such, this third and final factor weighs in favor of granting Mid-Continent's Motion to Stay.

## IV.
## CONCLUSION

30. The Texas Supreme Court's initial decision in *U.S. Metals* is not now and may never be a part of Texas jurisprudence. Based on this consideration alone, a ruling in the present case should be based upon a final decision in that case rather than the initial decision. Further, the factors considered by courts in determining whether a stay is appropriate all weigh in favor of granting Mid-Continent's motion. A stay will promote judicial economy by preventing potentially needless litigation and allowing the parties and the Court to proceed under more clearly defined law. A stay will not prejudice Plaintiff, but rather will save Plaintiff needless expense in the event that the final decision negates coverage. Further, the stay is not indefinite, but likely has a maximum duration of less than three months. Finally, Mid-Continent will suffer hardship if the stay is not granted by being forced to proceed under law that could imminently change and being forced to invest in potentially needless litigation. As such, Mid-Continent's Motion should be granted, and this case stayed pending final resolution of *U.S. Metals*.

**WHEREFORE, PREMISES CONSIDERED**, Defendant Mid-Continent Casualty Company prays that this Court abate these proceedings pending final resolution of the case entitled *U.S. Metals, Inc. v. Liberty Mutual Group, Inc. d/b/a/ Liberty Mutual Insurance Corporation*, Case No. 14-0753 and for such other and further relief in law or in equity to which it may otherwise be entitled.

Respectfully submitted,


By: s/ R. Brent Cooper

**R. BRENT COOPER**
State Bar No. 04783250
SDTX Bar No. 18271
brent.cooper@cooperscully.com
**ROBERT J. WITMEYER**
State Bar No. 24091174
SDTX Bar No. 2600115
rob.witmeyer@cooperscully.com

**COOPER & SCULLY, P.C.**
Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540

**ATTORNEYS FOR DEFENDANT MID-CONTINENT CASUALTY COMPANY**

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing document was served on counsel for all parties listed below pursuant to the Federal Rules of Civil Procedure on the 21st day of April, 2016.

David C. Griffin
Robert E. McKnight, Jr.
MAREK, GRIFFIN & KANUPP
P.O. Box 2329
Victoria, Texas
dcg@lawmgk.com
mcknight@lawmgk.com
*VIA EMAIL & FACSIMILE (361) 573-5040*

                        s/ R. Brent Cooper
                        ROBERT J. WITMEYER

## CERTIFICATE OF CONFERENCE

I, Robert J. Witmeyer, hereby certify that I personally conferenced with Plaintiff's counsel of record with regard to the merits of this Motion. He advised that his client would be unopposed to a stay as to dispositive motions only, but as to a total stay of proceedings as requested in this Motion, he advised that his client is OPPOSED.

                        s/ Robert J. Witmeyer
                        ROBERT J. WITMEYER

**DEFENDANT MID-CONTINENT CASUALTY COMPANY'S MOTION TO STAY**  Page 11

D/944680v2