IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| LAUGER COMPANIES, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 6:16-cv-11 |
| MID-CONTINENT CASUALTY § | |
| COMPANY, § | |
| § | |
| Defendant. § | |

## DEFENDANT MID-CONTINENT CASUALTY COMPANY'S MOTION TO AMEND THE FINAL JUDGMENT

**TO THE HONORABLE UNITES STATES JUDGE OF SAID COURT:**

**COMES NOW**, Defendant, Mid-Continent Casualty Company ("Mid-Continent" or "Defendant"), and files this Motion to Amend the Final Judgment pursuant to Federal Rule of Civil Procedure 59(e). In support of this Motion, Defendant respectfully states as follows:

### INTRODUCTION

This case arises out of an insurance coverage dispute over Plaintiff Lauger Companies, Inc.'s ("Lauger" or "Plaintiff") attempt to recoup the costs for replacing a defective product sold to Lauger by Mid-Continent's insured. On January 13, 2017, Lauger filed its Motion for Summary Judgment (Dkt. 31), to which Mid-Continent filed its Cross-Motion for Summary Judgment and Response in Opposition to Lauger's Motion for Summary Judgment on February 3, 2017. (Dkt. 32). On February 10, 2017, Lauger filed its Reply in Support of its Motion Summary Judgment and Opposition to Mid-Continent's Cross-Motion (Dkt. 33). On February 17, 2017, Mid-Continent filed its Reply Memorandum in Support of its Cross-Motion for Summary Judgment. (Dkt. 36). On August 2, 2017, the Court issued its Opinion on Summary

Judgment (Dkt. 38), and signed a Final Judgment partially in favor of Plaintiff. (Dkt. 39). Defendant timely files this Motion to Amend the Final Judgment. *See* FED. R. CIV. P. 59(e).

## MOTION AND BRIEF IN SUPPORT

### I. Non-Waiver

By submitting this Motion, Defendant is not waiving the arguments or positions taken in any of its motions, responses, or other filings in this case, and it is not agreeing that any claim by Plaintiff is viable, or that Plaintiff is entitled to any damages.

### II. Argument and Authorities

#### A. Legal Standard

##### 1. *Rule 59(e)*

Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact. *Schiller v. Physicians Res. Grp. Inc*., 342 F.3d 563, 567 (5th Cir.2003). A motion to alter or amend or for reconsideration filed under Rule 59(e) calls into question the correctness of a judgment. *See Templet v. Hydrochem, Inc*., 367 F.3d 473, 478 (5th Cir. 2004); *Molina v. Equistar Chem., L.P.*, 261 Fed. Apx. 729, 733 (5th Cir. 2008). Relief may be granted under Rule 59(e) only where the moving party "clearly establishes either a manifest error of law or fact" or presents "newly discovered evidence" that was not available before the judgment issued. *Id.*

A manifest error of law or fact is a decision based on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Ross v. Marshall,* 426 F.3d 745, 763 (5th Cir. 2005). The Fifth Circuit has explained what constitutes "manifest error," as follows:

> "Manifest error" is one that "is plain and indisputable, and that amounts to a complete disregard of the controlling law". *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004) (citing BLACK'S LAW DICTIONARY

>563 (7th ed. 1999)); *see also Andreiu v. Ashcroft*, 253 F.3d 477, 490 (9th Cir. 2001) (Beezer, J., concurring); *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 435 (5th Cir. 1982) (manifest error where district court employed wrong standard in excluding a witness); *Bank One, Texas, N.A. v. F.D.I.C.*, 16 F.Supp.2d 698, 713 (N.D. Tex. 1998) ("a manifest error is an obvious mistake or departure from the truth") (internal quotation omitted).

*Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

### B. The Summary Judgment Opinion Contains Manifest Errors of Fact and Law

#### 1. *The Court's Analysis*

The Court's opinion contains the following two paragraphs relevant to this Motion:

> The concrete was defective when it was poured. Pouring defective concrete is not a covered physical injury. The concrete was not destroyed, but it was removed because it was weak. The policy does not cover damages from demolishing the foundation and pouring the new foundation.
>
> Pouring the defective concrete damaged the non-concrete elements of the foundation. The foundation included wooden forms, reinforcing bar, Visqueen, sub-slab fill, and angle iron that would have secured the structure to the sub-slab fill, and angle iron that would have secured the structure to the foundation. As a consequence of their having been encased in bad concrete, their utility was destroyed. These elements were repurchased and reinstalled for the new foundation. The Mid-Continent policy covers these parts because they could not be repaired; they were consumed by the faulty concrete.

(Dkt. 39 at 2) (internal footnote omitted).

In the first paragraph above, this Court held that the Mid-Continent policy did not provide insurance coverage associated with demolishing the foundation and pouring a new foundation, relying upon Texas law. *Id.* at 2 n.1 (citing *U.S. Metals Inc., v. Liberty Mutual Group, Inc.*, 490 S.W.3d 20, 27 (Tex. 2015)). Mid-Continent agrees with this holding because damages incurred for replacing a defective product do not fall within the policy's insuring agreement, which provides coverage only for "damages because of . . . property damage to which this insurance applies." (Dkt. 32-1 at 17). The costs associated with demolishing and replacing the foundation are damages because of a ***defective product*** instead of damages because

of *property damage*.  The Mid-Continent policy does not cover the damages incurred to replace a defective product.  *See id.*

Respectfully, the second paragraph quoted above contains both factual and legal errors and is the basis of this Motion.

### 2.     *Factual Errors*

With respect to factual errors, the Court states, "Pouring the defective concrete damaged the non-concrete elements of the foundation."  The Court further states, "As a consequence of their having been encased in bad concrete, their utility was destroyed."  These statements appear to contain two factual errors.  First, it is undisputed that Mid-Continent's insured did not pour the concrete.  (Dkt. 31 at 2; Dkt. 31-1 at ¶5; Exhibit 1 at Rog 6 ("Cross Roads was to supply and deliver concrete that was specified to reach or exceed 3000 psi strength in 28 days.  They were not expected to place the concrete, but were to have supervision on site to help with coordinating and overseeing the concrete being poured out of the trucks and into the hopper on the pump truck during the entire pour."); Exhibit 1 at Rog 7 ("Cross Road's actual performance deviated from the agreement described in response to Interrogatory No. 6 in that the concrete did not reach or exceed 3000 psi strength in 28 days.")).  Thus, the insured was one step further removed from Lauger's damages than the Court's opinion suggests.

The second and more critical factual error is that neither the pouring nor selling of concrete destroyed the non-concrete elements' utility.  Lauger did not argue or present any evidence that the non-concrete elements could not be used after being incased in concrete.  (Dkt. 31 at 1-9)  For instance, Lauger never submitted evidence that the electrical wiring no longer worked after being incased in the defective concrete.  *See id.*  There is no evidence suggesting that, if the building had been completed, there would have been electrical problems or problems with any other non-concrete element due to the concrete.  The engineer who designed the

foundation advised Lauger that the defective concrete could be made acceptable by pouring an additional 4" to 6" inches of concrete on top of the existing concrete plus some measures to help ensure a good bond between the two layers. (Dkt. 32 at 2). But the owner of the property rejected the engineer's option and requested that Lauger replace the defective foundation instead. (Dkt. 32 at 3). Lauger has never argued that the non-concrete elements would have lost their utility if the engineer's option was adopted.

Instead, the non-concrete elements lost their utility only after the remediation process began. Indeed, Lauger took this position and submitted evidence that *the destruction* of the concrete caused the damage to the non-concrete elements. As stated in Lauger's Reply Memorandum, "Here, on the contrary, the evidence (the underlying petition's allegations are no longer relevant) proves that *tearing out and replacing the defective concrete caused damage to tangible property other than the concrete* supplied by CRI." (Dkt. 33 at 5). Therefore, the remediation process caused the damage to the non-concrete elements and ultimately their loss of utility, not the pouring or selling of the defective concrete. Mid-Continent has demonstrated manifest error of fact in the assessment of the evidence. *See* FED. R. CIV. P. 59(e); *Guy*, 394 F.3d at 325; *Ross*, 426 F.3d at 763.

### 3. *Legal Error*

This second factual error is critical to the outcome of the case because the replacement costs for the non-concrete elements are uncovered consequential damages under the policy. Under the Mid-Continent policy, the insured is entitled to consequential damages resulting from covered property damage. Again, the policy states that the insured is entitled to "damages because of . . . property damage *to which this insurance applies*." (Dkt. 32-1 at 17) (emphasis added). Thus, the policy provides coverage for consequential damages *only* when there is first covered property damage. *See* Donald S. Malecki, Commercial General Liability Coverage

Guide, 2-3 (11th Ed. 2015) ("In light of [the insuring agreement] wording, all damages flowing as a consequence of bodily injury or property damage would be encompassed by the insurer's promise, subject to any applicable exclusion or condition. This includes purely economic damages, *as long as they result from otherwise covered bodily injury or property damage*.") (emphasis added).

Judge Rosenthal's opinion in *Bldg. Specialties, Inc. v. Liberty Mut. Fire Ins. Co.,* 712 F. Supp. 2d 628, 636 (S.D. Tex. 2010), makes this point clear. In that case, the insurance policy did not provide coverage for the costs of ripping and repairing a hole in the ceiling to repair the defective duct work because the defective duct work was not first covered. *See id.* at 640-41; *see also Regional Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal.App.4th 1377, 173 Cal.Rptr.3d 91 93-94 (2014) (denying coverage for repair costs of non-defective items where the damage was caused by the remediation of defective work). If the policy had covered the duct work in *Building Specialties*, the consequential damages for repairing the ceiling should have been covered as well.

In this case, although the Court correctly concluded that the policy does not cover the costs incurred to remove and replace the defective product, the Court makes a legal error by concluding that the policy covers those consequential damages incurred for destroying the non-defective elements in order to replace the defective product. The costs incurred to remove and replace the non-concrete elements are consequential damages for removing a defective product, as those costs flow from removing and replacing the defective concrete. Indeed, Lauger never would have incurred those costs but for the removal of the defective foundation. And under the policy, the costs to replace the non-concrete elements would be covered as consequential damages *only if* there was covered property damage first. (Dkt. 32-1 at 17). This Court correctly held that the defective concrete was not covered property damage in the first instance.

As a result, none of the consequential damages associated with remediating the defective concrete—including the costs for removing and replacing the non-concrete elements during the remediation process—can be awarded either. Those costs are simply not "damages because of . . . property damage to which this insurance applies." *See Building Specialties*, 712 F. Supp. 2d at 640-41; *Regional Steel Corp.*, 173 Cal.Rptr.3d at 93-94.[1]

An award of damages for intentionally damaging non-defective elements in order to repair an uncovered element is inconsistent with the policy's insuring agreement that allows for consequential damages only when there is first covered property damage. One commentator whose practice is limited to the representation of *policyholders* summarized this point:

> Another issue that has been litigated with some frequency is whether the CGL policy provides coverage for the costs to rip out otherwise non-defective work in order to repair defects in the insured's work. While at first glance the case law across the country seems to be mixed, a careful look at the fact patterns discussed in the cases suggests a prevailing view. In particular, the majority view can be summed up as follows: the costs to rip out otherwise non-defective work in order to repair otherwise non-covered defective work is not "property damage," but the costs to rip out non-defective work in order to repair covered "property damage" is considered damages because of "property damage" and is covered. The rationale of many of these decisions is that the nature of the repairs cannot create coverage if none exists.

Lee H. Shidlofsky, *Deconstructing CGL Insurance Coverage Issues in Construction Cases*, Journal of the American College of Construction Lawyers, Vol. 9, No. 2 (Summer 2015).

This Court's holding contains a manifest error of law because it permits an insured to create coverage where none previously existed by intentionally causing damage. This Court should amend or alter the Final Judgment to provide Lauger no coverage under Mid-Continent's

---

1. As explained in Mid-Continent's summary judgment briefing, the Texas Supreme Court did not consider the scope of coverage available under a commercial general liability policy insuring agreement for consequential damages because of a defective product in *U.S. Metals*. (Dkt. 32 at 17-20; Dkt. 36 at 4-5). Instead, that court addressed two discrete issues: (1) physical injury and (2) the impaired property exclusion. *U.S. Metals*, 490 S.W.3d at 23.

policy pursuant to Rule 59(e).[2]  *See* FED. R. CIV. P. 59(e); *Guy*, 394 F.3d at 325; *Ross*, 426 F.3d at 763.

## CONCLUSION AND PRAYER

As discussed herein, manifest errors of fact and law support the grant of Defendant's Rule 59(e) motion to alter or amend the final judgment.  Respectfully, the Court's finding that the pouring of the concrete destroyed the non-concrete elements' utility is inaccurate; instead, the remediation process damaged the non-concrete elements and, as a result, destroyed those elements' utility.  The Court's award of consequential damages for replacing the non-concrete elements is improper, as those damages are damages because of an uncovered defective product instead of damages because of covered property damage.

**WHEREFORE**, Defendant, Mid-Continent Casualty Company, respectfully prays that the Court grant Defendant's Motion to Amend the Final Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure by concluding that the Mid-Continent policy provides no coverage for any of Lauger's damages, including the costs Lauger incurred to replace the non-concrete elements.  Defendant also prays the Court grant it all such other and further relief as this Court deems just.

---

2. The Court's holding is also inconsistent with the insuring agreement's requirement that the property damage be caused by an occurrence (i.e., an accident). (Dkt. 32-1 at 17).  The intentional destruction of property is not an accident.  *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W. 3d 1, 8-9 (Tex. 2007).

Respectfully submitted,

By: /s/R. Brent Cooper
    **R. BRENT COOPER**
    State Bar No. 04783250
    SDTX No. 18271
    Brent.Cooper@cooperscully.com
    ATTORNEY-IN-CHARGE
**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540

**ATTORNEYS FOR DEFENDANT**
**MID-CONTINENT CASUALTY COMPANY**

**OF COUNSEL:**

**ROBERT J. WITMEYER**
State Bar No. 24091174
SDTX No. 2600115
Rob.Witmeyer@cooperscully.com
**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540

## CERTIFICATE OF SERVICE

  I hereby certify that on the 30th day of August 2017, I electronically filed Defendant Mid-Continent Casualty Company's Motion to Alter or Amend Final Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**VIA EFILE**
Robert E. McKnight, Jr.
mcknightr@lawmgk.com
David C. Griffin
dcg@lawmgk.com
203 N. Liberty Street
Victoria, Texas 77901
**Counsel for Plaintiff**
**Lauger Companies, Inc.**

              /s/R. Brent Cooper
             **R. BRENT COOPER**

D/971451v6